CHILTON ACCOUNTS RECEIVABLE MANAGEMENT, INC., APPELLEE,
V. PROJECT LIFE MINISTRIES, INC., A NEBRASKA CORPORATION,
DEFENDANT AND THIRD-PARTY PLAINTIFF, APPELLEE,
TELAMARKETING COMMUNICATIONS OF OMAHA, THIRD-PARTY
DEFENDANT, APPELLANT.
406 N.W.2d 133

Filed May 22, 1987.   No. 86-913.

John C. Lindsay of Lindsay & Lindsay, for appellant.

David S. Houghton of Fitzgerald & Brown, for appellee Project Life Ministries.

No appearance for appellee Chilton Accounts Receivable Management.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

This action originally commenced as a collection action in the county court for Douglas County by Chilton Accounts Receivable Management, Inc., against Project Life Ministries, Inc. Project Life answered and filed a third-party action against TelaMarketing Communications of Omaha (TMC) based on a guarantee or letter of indemnity provided to Project Life by TMC. The posture of that third-party action was consented to

for the sake of convenience by the parties and the court. The county court at trial and district court on appeal ruled in favor of the plaintiff on the original action, and Project Life does not contest those rulings. The county court also held against Project Life on its third-party petition, which latter judgment was reversed by the district court on appeal, and the district court entered judgment in favor of Project Life in the amount of $4,000. TMC has appealed that judgment of the district court.

TMC believes the district court erred by applying the wrong standard of review and in reversing the findings of fact of the county court. Because we hold that the district court applied the correct standard of review and correctly reversed the decision of the county court, we affirm the decision of the district court.

Project Life is a nonprofit organization founded to offer counseling to young women with problem pregnancies. The organization's main communication tool to reach those young women around the nation is through 1-800 telephone numbers. In August of 1984, TMC entered into an agreement with Project Life to provide this 1-800 service by September 7, 1984. The specific 1-800 numbers were assigned to Project Life by TMC on August 21, 1984, although those numbers were not yet operable.

The numbers were not working by September 7, 1984, so the director of Project Life, David Harvey, telephoned TMC's territorial manager, Duane King, to inquire about the delay. King assured Harvey that the lines would be available in a couple of days and that TMC was just having a little problem with AT&T. Harvey explained to King that he was about to order $4,000 worth of advertisements with the 1-800 numbers printed on them. He explained that he was hesitant to do the printing without the numbers being operable and so requested a guarantee from King for the printing costs. King agreed to guarantee the printing costs. In a followup letter King wrote: "In response to your request for a guarantee . . . TMC herby [sic] agrees to assume liability up to the amount of $4,000.00 printing expense, in the event that TMC is unable to supply Project Life with the number assigned to you." Harvey then went ahead and ordered the advertisements with the numbers

TMC had assigned to Project Life printed on them. This printing included advertising stickers and various contribution solicitation materials, which were sent out nationally.

Thereafter, Harvey spoke with King approximately every other day, wondering when the numbers would be connected. He was given some excuse that TMC would be out next week, or tomorrow, or that TMC had a holdup with AT&T, or its truck was down. This went on for a couple of months. Harvey called King on November 26, 1984, and canceled his order for the 1-800 numbers. Project Life later ordered 1-800 services from another carrier and received a different number than those which TMC had assigned Project Life and which Project Life had printed on its earlier-ordered advertisements.

In December of 1984, AT&T provided TMC with the block of 1-800 numbers TMC had ordered. Included in that block of numbers were the 1-800 numbers TMC had originally assigned to Project Life. Had Project Life not canceled its order, TMC would have been able to provide those numbers to Project Life.

Based on these facts, the county court found for TMC on the third-party petition, but made no specific findings of fact. On appeal from the county court, the district court reversed the county court's judgment and entered judgment for Project Life.

On appeal from the county court, the district court is to review the case for error appearing on the record. Neb. Rev. Stat. § 24-541.06 (Reissue 1985). In a law action the disposition of the trial court has the effect of a jury verdict and is not to be disturbed on appeal unless it is clearly wrong. *South Sioux City Star v. Edwards*, 218 Neb. 487, 357 N.W.2d 178 (1984). However, when, as here, such judgment is not supported by the evidence, it is clearly wrong and must be set aside. See *Siebler Heating & Air Conditioning v. Jenson*, 212 Neb. 830, 326 N.W.2d 182 (1982).

TMC claims there was sufficient evidence in the record for the county court to find that TMC should not be held liable on the letter of guarantee. TMC suggests that the county court reached its conclusion using the following steps. (1) The guarantee states that TMC will be liable for printing costs only if it cannot provide the assigned numbers. (2) The guarantee

does not provide a time for performance. (3) TMC therefore should be allowed a reasonable time for performance. (4) A reasonable time for performance extended into December of 1984. (5) Project Life canceled its order before TMC's time for performance had expired. (6) Therefore, Project Life is not entitled to recover on the guarantee.

We agree with TMC that because the guarantee does not provide a time for performance, a reasonable time for performance will be implied by law. *Gustav Thieszen Irr. Co., Inc. v. Meinberg,* 202 Neb. 666, 276 N.W.2d 664 (1979). However, "[w]hat constitutes a reasonable time must be determined from the general nature and circumstances of each case." *Clemens Mobile Homes, Inc. v. Guerdon Industries, Inc.,* 199 Neb. 555, 559, 260 N.W.2d 310, 313 (1977). Considering the circumstances of this case, there was no evidence upon which the county court could find that a reasonable time for performance extended into December, as TMC asserts.

The circumstances surrounding the guarantee clearly establish that Project Life wanted the 1-800 numbers quickly and that TMC knew this before it executed the guarantee. Project Life specifically contacted TMC because TMC asserted it could provide service "at just a fraction of the time commitment" required by AT&T. This first contact was made on August 16. On August 17, TMC agreed to supply the service by September 7, a mere 3 weeks away. When TMC missed this due date, Harvey phoned King to inquire about the delay. Harvey explained to King that he needed the numbers right away due to the printing situation. King assured Harvey that the numbers would be operational in a couple of days. Harvey was still hesitant to go ahead with the printing, and only then asked for and received the guarantee. Moreover, after the guarantee had been executed, Harvey continually hounded TMC with questions about when the numbers would be operational, and King always indicated that the numbers would be operational shortly.

The testimony produced by TMC, which indicated that the normal period of delay in the industry was 90 to 120 days, does not change the result in this case. The relevant inquiry is not

whether or how much Project Life knew about the delay in the industry; it is what Project Life was told by TMC that determines what constitutes a reasonable time for performance under the circumstances. Project Life was promised 1-800 number service within a matter of days, and when that service was not forthcoming, it was told repeatedly that service would be operational shortly. Under those circumstances, a reasonable time for performance was a matter of days, not the 3 months TMC believes is appropriate. Thus, there was no credible evidence to support the judgment of the county court, and judgment should have been rendered in favor of Project Life. This is what the district court did.

The various printing materials which Project Life ordered at a cost to it in excess of $4,000 were rendered worthless as a proximate result of the failure of TMC to furnish the agreed 1-800 numbers within a reasonable time. This was the evidence which supported the district court's order of reversal and judgment in favor of Project Life. "If the district court reverses [a judgment of the county court], it may enter judgment in accordance with its findings . . . ." § 24-541.06.

The judgment of the district court was correct and is affirmed.

AFFIRMED.